## Case No. 14,990a.

### UNITED STATES v. DOWDEN.

[1 Hayw. & H. 145.] [1]

Criminal Court, District of Columbia. Aug. 12, 1843.

CRIMINAL LAW—PROSECUTION—EVIDENCE—HAND-WRITING—WITNESS.

1. The prisoner has a right to show the spirit and temper with which the prosecution has been conducted, and if it has been brought to bear against the accused he has a right to bring it to the attention of the jury.

2. In the examination of a witness as to the handwriting of the prisoner he must answer from his knowledge of handwriting; he must have seen the writing which the writing in question resembles, and must come to the conclusion in his own mind that he believes it to be the prisoner's handwriting.

3. A witness whose name is on the back of the indictment should be called by the district attorney if he is a material witness, not otherwise.

The prisoner [Raymond P. Dowden] was indicted for stealing treasury notes that were issued by the government under the act of congress of January 31st, 1842 [5 Stat. 469].

---

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

Philip R. Fendall, U. S. Dist. Atty.
W. L. Brent and Jas. Hoban, for prisoner.

There were several indictments against the prisoner. The counsel for the prisoner asked on which the district attorney intended to try the prisoner, contending that they should be proceeded with in their order. The district attorney stated that he would be tried on the indictment for larceny.

After argument THE COURT directed the trial to proceed on the indictment for larceny.

Mr. Fendall, in opening the case, said there were strong circumstances fixing suspicion on the defendant, which required explanation. He hoped the defendant would be able to explain them, and if he could do so satisfactorily no one would feel a greater degree of gratification than himself. If he could make that explanation to the jury it would be their pleasure to give him a verdict of acquittal.

Mr. Hoban opened the case for the defence. In his remarks he stated the language of the district attorney's distinguished predecessor: "If there was nothing else than a handwriting upon which to convict a man, I would not hang a dog on such testimony, because I could not swear to my own handwriting. I would not believe any man who attempted to swear positively—so much do handwritings approximate to each other, and so difficult is it to distinguish between them." The whole case stands upon the undistinguished handwriting of the accused. I ask for the accused a full trial and an honorable acquittal.

In the course of the trial the following question was put to one of the government witnesses, who was called by the defence on cross examination: "Q. State whether any person or persons engaged in prosecuting the defendant tampered with you before your examination at the enquiring court in this place, the influence used, the threats made, or the rewards held out to you, if you would swear that B. C. Campbell and the defendant were the same person; and by whom such influences were used, such threats made, or such rewards held out, and at what place, and under what circumstances? A. Yes; I was treated in that matter."

The district attorney appealed to the court whether the question was pertinent or not.

"The defence," said Mr. Brent, "we set up is not only that our client is not guilty, but that the investigation of all the facts connected with this case will be to bring to light one of the most infamous conspiracies to destroy the character and standing of an innocent man that ever was attempted in any community. In pursuit of this object I would not stop to inquire who might or might not be implicated. I care not what the standing of a man may be, how distinguished his character, or lofty his station, yet if my duty to my client requires me to bring his conduct before that jury, I will not hesitate to do so."

THE COURT decided that the question could be put, and answered only so as to reach officers of the government of the United States who have been sworn, or whose evidence has been used by consent in this case, but not as to other officers. Exceptions were taken as to this ruling.

THE COURT, on the following day, reversed its decision, and stated that the defendant had a right to show the spirit and temper with which the prosecution had been conducted, and if it had been brought to bear against the accused, he had a right to bring it to the attention of the jury, and, therefore, decided that the testimony might be offered.

THE COURT expressed the opinion that no publication ought to be made of trials in courts of justice while they were pending, as they might produce improper influence.

A witness was examined as to the prisoner's handwriting. He stated that he is familiar with his handwriting; that there is nothing in the writing shown that he could positively identify as his handwriting.

THE COURT remarked that the witness must answer from his knowledge of handwriting. He must have seen the writing which the part on the note resembles, and come to a conviction in his own mind that he believes it to be the traverser's writing. He must be convinced and speak from his conviction. This is the rule of law.

Mr. Brent claimed it as a right that the district attorney should have every witness whose name is on the back of the indictment examined, as he wished to cross-examine them, citing Archb. Cr. Law, p. 141.

THE COURT decided that the witness should be called if he was a material witness, not otherwise.

The case was submitted to the jury without argument.

The jury brought in a verdict of "Not guilty."